Filed 5/19/14  In re Darius M. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re DARIUS M. , a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B251738 (Super. Ct. No. J068012) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, <br><br> Petitioner  and Respondent, <br><br> v. <br><br> AMBER V. & ALFREDO V., <br><br> Respondents and Appellants. | |

Amber V., the mother of Darius M. (child), and Alfredo V., the nonbiological but presumed father of child, appeal from an order terminating their parental rights and selecting adoption as the permanent plan.  (Welf. & Inst. Code, § 366.26.)[1]  They contend that the juvenile court erroneously refused to conduct an evidentiary hearing on father's section 388 petition to modify a previous order terminating his reunification services.  In addition, they contend that the court's finding of adoptability is not supported by substantial evidence.  Finally, father argues that the court erroneously

_____

[1] All statutory references are to the Welfare and Institutions Code.

failed to apply the beneficial relationship exception to the termination of his parental rights. (§ 366.26, subd. (c)(1)(B)(i).) We affirm.

*Factual and Procedural Background*

Child was born in February 2010 and is now four years old. At the time of his birth, mother and father (parents) were married but had been separated for about one year. Mother claims, and father admits, that he is not the biological father. The juvenile court found him to be child's presumed father.

According to the jurisdiction/disposition report dated November 18, 2010, mother was homeless and had not worked for years. Mother said that she suffers from depression and "periodically uses Methamphetamine to get a boost in energy." She "smokes Marijuana for anxiety . . . ." On October 25, 2010, mother was hospitalized for a mental health disorder pursuant to section 5150. On November 12, 2010, father "stated that he has seen [child], but has not provided care and support for [him] because [mother] and him have been separated for two years and she was not living with him."

On November 23, 2010, the juvenile court sustained a dependency petition after an uncontested hearing. (§ 300.) It removed custody of child from parents and found that father "does not have a relationship with [child]." Family reunification services were provided to parents.

A status review report dated May 9, 2011, recommended that reunification services be terminated and that the matter be set for a section 366.26 hearing for selection and implementation of a permanent plan of adoption. According to the report, after the jurisdiction and disposition hearing mother was twice arrested. The most recent arrest was on April 13, 2011, for being under the influence of a controlled substance. Mother was "diagnosed with a Major Depressive Disorder, . . . a Borderline Personality Disorder and Methamphetamine abuse." Mother "was asked to leave [a drug treatment] program because she had become a danger to other staff, residents, and children present at the center. [She] refused to leave and had to be forcibly removed by law enforcement." Mother entered another drug treatment

2

program. The police forcibly removed her from this program because she "was screaming, thrashing about the residence" and appeared to present "a danger to staff, the residents, and the children residing in the home."

Father, who lived out of state, told the social worker that "he had started his own business installing rain gutters, was very busy working, and could not commit to visiting with [child]." Father never visited child during the six-month review period. Although father was in Ventura County during the first week of April 2011, he did not contact the social worker to arrange a visit with child. Father "stated that he had many things to do and had heard [child] might be sick." On April 28, 2011, father told the social worker "that stopping Family Reunification services and having a family adopt [child] would be the best for him." Father said that mother was "a violent person" and a drug user. The social worker noted that child has "no relationship" with father.

On June 2, 2011, the juvenile court terminated family reunification services and scheduled a selection and implementation hearing pursuant to section 366.26. The hearing was initially scheduled for September 26, 2011. It was continued until August 2012, when the court selected long term foster care as the appropriate permanent plan. In March 2013 the court scheduled another section 366.26 hearing, which occurred on September 25, 2013.

At all times beginning on October 24, 2010, when child was eight months old, he has lived in the same foster home. According to the section 366.26 report dated July 1, 2013 (the section 366.26 report),[2] the foster parents are committed to adopting child. "[A] strong bond exists between the child and the foster family." A social worker who observed child interacting with the foster parents wrote: "[Child] appears happy, comfortable, and emotionally attached to the family as they are with him. [Child] is thriving in this nurturing home environment."

---

[2] There are several section 366.26 reports. The most recent is the one dated July 1, 2013.

The section 366.26 report notes that father moved to Ventura County in April 2012 and began visiting child on May 2, 2012. Since that date, he has visited child twice each month.

On September 24, 2013, the day before the section 366.26 hearing, father filed a section 388 petition to modify the order of June 2, 2011, terminating his reunification services. Father requested that reunification services be reinstated. In support of the petition, father alleged that he "has been visiting the child on a consistent basis and has developed a strong and bonding [*sic*] relationship with the child." Respondent protested: "That he's seen the child for one-hour stints, two times a month is not a change of his circumstances." The juvenile court agreed. It also concluded that the section 388 petition did not show "that [the reinstatement of reunification services] is in the child's best interest." The court summarily denied the petition because father had failed to make a prima facie showing of changed circumstances sufficient to warrant a modification of the challenged order.

*Denial of Section 388 Petition*

Parents argue that the juvenile court erred in summarily denying father's section 388 petition seeking the reinstatement of reunification services. " 'Such petitions are to be liberally construed in favor of granting a hearing to consider the parent's request. [Citations.] The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]' [Citation.] 'There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the child[]. [Citation.] If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing. [Citation.] We review the juvenile court's summary denial of a section 388 petition for abuse of discretion.' [Citation.]" (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.)

"Whether [father] made a prima facie showing entitling [him] to a hearing depends on the facts alleged in [his] petition, as well as the facts established as without dispute by the court's own file . . . ." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 461.) Father alleged as follows: "I've been consistent with all scheduled visits." At the beginning of each visit, child "has a big smile on his face and walks towards me." Child "is content and he interacts well with me. As we play games such as puzzles and cars he laughs and enjoys our time together." "[T]he more time we spend together the stronger our bond becomes." "At the end of the hour, when it's time to leave," child's "face goes from a smile to a frown. As I walk [child] to the car we exchange affections and I put him in his car seat. . . . A couple of times in the past he pointed at the passenger front seat and told me to sit there. I explained to him that I can't go with him. Now he doesn't ask anymore."

We need not determine whether father made a prima facie showing of changed circumstances. Even if father had made the requisite showing, "there was no showing whatsoever of how the best interests of [this] young child[] would be served by depriving [him] of a permanent, stable home in exchange for an uncertain future. [Citations.]" (*In re C.J.W.*, *supra*, 157 Cal.App.4th at p. 1081.) Father's declaration is particularly inadequate in view of his complete absence from child's life until May 2012, when child was two years, three months old. In April 2011 father told the social worker that "he agreed with the recommendation to terminate Family Refunification[] [Services] and have [child] adopted." "The parents in this family clearly, by deed if not by name, were [child's foster] parents. They, not [father], provided [child] with all the day-to-day, hour-by-hour care needed by a helpless infant and then growing toddler. Thus, although [father's] petition states that [he] has bonded with [child], and that [child] is happy to see [him] and reaches for [him] on their visits, such visits, in total, add up to only a tiny fraction of the time [child] has spent with the foster parents. On this record, no reasonable trier of fact could conclude that the bond, if any, [child] feels toward [father] . . . is that of a child for a parent." (*In re Angel B.*, *supra*, 97

5

Cal.App.4th at p. 465.)  Accordingly, the juvenile court did not abuse its discretion in summarily denying the section 388 petition.

*Adoptability*

Before terminating parental rights, the juvenile court must find by clear and convincing evidence that the child is likely to be adopted within a reasonable time.  (§ 366.26, subd. (c)(1); *In re Zeth S.* (2003) 31 Cal.4th 396, 406.)   In assessing a child's adoptability, " 'the juvenile court must focus on the child, and whether the child's age, physical condition, and emotional state may make it difficult to find an adoptive family.  [Citations.]  In reviewing the juvenile court's order, we determine whether the record contains substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that [the child] was likely to be adopted within a reasonable time. [Citations.]'  [Citations.]  We give the court's finding of adoptability the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of affirming.  [Citation.]"  (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1561-1562.)  "A social worker's opinion, by itself, is not sufficient to support a finding of adoptability.  [Citation.]"  (*In re Brian P.* (2002) 99 Cal.App.4th 616, 624.)

Parents contend that substantial evidence does not support the juvenile court's finding that child is adoptable.  Respondent argues that parents forfeited the adoptability issue because they did not raise it below.  We disagree.  "[W]hile a parent may waive the objection that an adoption assessment does not comply with the requirements provided in section 366.21, subdivision (i), a claim that there was insufficient evidence of the child's adoptability at a contested hearing is not waived by failure to argue the issue in the juvenile court."  (*In re Brian P.*, *supra*, 99 Cal.App.4th at p. 623.)  We therefore consider the adoptability issue on its merits.

"If the child is considered generally adoptable, we do not examine the suitability of the prospective adoptive home.  [Citation.]  When the child is deemed adoptable based solely on a particular family's willingness to adopt the child, the trial court must determine whether there is a legal impediment to adoption.  [Citation.]."  (*In re Valerie W.* (2008) 162 Cal.App.4th 1, 13.)

Here, the social worker did not opine, and the juvenile court did not find, that child is adoptable based solely on the foster parents' willingness to adopt him. In the section 366.26 report, the social worker stated that "there are other adoptive families that have been identified and are available to adopt a child of this child's age, physical health, [and] mental emotional needs." It is reasonable to infer that the juvenile court considered child to be generally adoptable. Thus, the court "did not have a duty . . . to evaluate whether there was a legal impediment to adoption by the [foster parents]." (*In re G.M.* (2010) 181 Cal.App.4th 552, 564.)

Substantial evidence supports the juvenile court's implied finding that child is generally adoptable and likely to be adopted within a reasonable time. On September 25, 2013, when the court ordered the termination of parental rights, child was three years old. This was young enough to make him attractive to prospective adoptive parents. There is no evidence that child suffers from a physical or mental disease or disability. According to the section 366.26 report, child is in good health, "is on target developmentally for his age, and displays appropriate fine and gross motor skills." He also "displays age appropriate psychomotor behaviors and is verbal. He is very responsive to the current care providers' direction and affection." Social workers "have observed [child] to have the ability to stay on schedule, engage in play with other children, [and] verbalize his needs." Moreover, "he's able to be affectionate by giving hugs, kisses and allowing the prospective adoptive parents to console him and return his affection."

Child's foster parents want to adopt him. " ' "Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family.*" ' [Citation.]" (*In re Gregory A.*, *supra*, 126 Cal.App.4th at p. 1562; see also *In re A.A.* (2008) 167 Cal.App.4th 1292, 1313 ["the juvenile court

7

may properly consider a prospective adoptive parent's willingness to adopt as evidence that the child is likely to be adopted within a reasonable time"].) "Case law does not require evidence of additional approved families who are available and willing to adopt the children." (***Ibid***.)

*Beneficial Relationship Exception*

"By the time of a section 366.26 hearing, the parent's interest in reunification is no longer an issue and the child's interest in a stable and permanent placement is paramount. [Citations.] . . . The child has a compelling right 'to [have] a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' [Citation.] Adoption is the Legislature's first choice because it gives the child the best chance at such a commitment from a responsible caretaker. [Citations .]" (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348.)

"If the court finds that a child may not be returned to his or her parent and is likely to be adopted, it must select adoption as the permanent plan unless it finds that termination of parental rights would be detrimental to the child under one of [several] specified exceptions. [Citations.]" (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.) During the section 366.26 hearing, father's counsel told the court that father was relying on the beneficial relationship exception. This exception applies if (1) "[t]he parents have maintained regular visitation and contact with the child and [2] the child would benefit from continuing the relationship." (§ 336.26, subd. (c)(1)(B)(i).) The parents have the burden of establishing the exception. (*In re Derek W.*, *supra*, 73 Cal.App.4th at p. 826; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1345.)

Father contends that the juvenile court erroneously determined that he had not met his burden. The court told father: "I just do not believe that you have met the burden to show that [the] parental bond is so strong that it outweighs the benefit of permanency in an adoptive home." We review the juvenile court's determination under the substantial evidence standard. (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642; *In re Naomi P.* (2005) 132 Cal.App.4th 808, 824; *In re Derek W., supra,* 73

8

Cal.App.4th at p. 827; contra, *In re Jasmine D., supra,* 78 Cal.App.4th at p. 1351 [reviewing court should apply abuse of discretion standard].)

The first prong of the beneficial relationship exception is that "[t]he parents have maintained regular visitation and contact with the child." (§ 336.26, subd. (c)(1)(B)(i).) Substantial evidence supports the juvenile court's implied finding that father failed to establish the first prong because of his complete absence from child's life until child was two years, three months old.

The second prong of the exception is that "the child would benefit from continuing the relationship." (§ 336.26, subd. (c)(1)(B)(i).) "Satisfying the second prong requires the parent to prove that 'severing the natural parent-child relationship would deprive the child of a *substantial,* positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A . . . parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent.' [Citation.] Evidence that a parent has maintained ' "frequent and loving contact" is not sufficient to establish the existence of a beneficial parental relationship.' [Citation.]" (*In re Marcelo B.*, *supra*, 209 Cal.App.4th at p. 643.) "[A] child should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree but does not meet the child's need for a parent." (*In re Jasmine D., supra,* 78 Cal.App.4th at p. 1350.)

For the reasons discussed in the previous section of this opinion entitled "*Denial of Section 388 Petition,*" we conclude that a reasonable trier of fact could find that father's contact with child had not continued or developed " 'a *substantial,* positive emotional attachment such that the child would be *greatly* harmed' " if the relationship were terminated. (*In re Marcelo B.*, *supra*, 209 Cal.App.4th at p. 643.) Father and child had no more than a friendly relationship, certainly not a parent-child relationship. A case aide reported that, at the end of child's twice-monthly visits with father, "child demonstrates no distress when leaving the father's presence. The child transitions back to the prospective adoptive parents with ease, with no behavioral difficulties

9

observed."  Thus, "[t]his is not the extraordinary case where an adoption should have been foreclosed by the exception provided in section 366.26, subdivision (c)(1)(A) [now (c)(1)(B)(i) ]."  (*In re Jasmine D., supra,* 78 Cal.App.4th at p. 1352.)  "[T]he juvenile court properly found there was no beneficial parental relationship sufficient to overcome the statutory preference for adoption."  (*In re Marcelo B.*, *supra*, 209 Cal.App.4th at p. 644.)

*Disposition*

The judgment (order terminating parental rights and selecting adoption as the permanent plan) is affirmed.

NOT FOR PUBLICATION

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

Ellen Gay Conroy, Judge

Superior Court County of Ventura

_____

Lori Siegel, under appointment by the Court of Appeal, for Amber V., Appellant.

Christopher R. Booth, under appointment by the Court of Appeal, for Alfredo V., Appellant.

Leroy Smith, County Counsel, County of Ventura and Patricia McCourt, Assistant County Counsel, for Petitioner and Respondent.