[No. B238619. Second Dist., Div. Six. Sept. 24, 2012.]

In re MARCELO B., a Person Coming Under the Juvenile Court Law.
VENTURA COUNTY HUMAN SERVICES AGENCY, Plaintiff and
Respondent, v.
FRANK B. et al., Defendants and Appellants.

COUNSEL

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant Frank B.

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant Stefanie B.

Leroy Smith, County Counsel, and Patricia McCourt, Assistant County Counsel, for Plaintiff and Respondent.

OPINION

YEGAN, J.—The adverse consequences of alcoholism are well known. People have the power to become "alcoholics" and as long as they do not victimize others, the law, generally speaking, leaves them alone. As family members will attest, there are silent victims in the wake of alcoholism. Here, one of such victims is the five-year-old son of two such people. They are deeply entrenched in alcohol as a way of, and perhaps as an end to, life. The judiciary has been tasked by the Legislature to protect children. There are many adverse consequences to alcoholism. We add one more: loss of a child through legal termination of parental rights.

Frank B. (Father) and Stefanie B. (Mother) appeal from orders of the juvenile court denying Father's request to change an order of the juvenile court pursuant to Welfare and Institutions Code section 388,[1] and terminating their parental rights to their biological son, Marcelo B., born in February 2007. They contend the juvenile court abused its discretion when it denied the section 388 petition because Father showed changed circumstances, i.e., participation in alcohol abuse treatment. They also contend the trial court erred in terminating their parental rights because they maintained regular visitation with Marcelo and he would benefit from continuing their relationship. We affirm.

### Facts and Procedural History

Father and Mother each have a long history of alcohol abuse. Mother suffers from pancreatitis, a condition exacerbated by alcohol use. On the afternoon of June 7, 2011, Mother felt drowsy and ill after taking prescription medication. She drank alcohol, which made her feel worse. Father, who had also been drinking, decided to drive her to the hospital. The couple put their then four-year-old son Marcelo in the car and started out for the hospital. Along the way, a Simi Valley police officer stopped Father and arrested him for driving under the influence of alcohol. Father's intoxication was so obvious and so severe that the officer did not ask him to perform the usual field sobriety tests. The officer believed it would be dangerous for Father to attempt them.

The officer called an ambulance to take Mother and Marcelo to the hospital. Because Mother was ill and also intoxicated, nurses at the hospital called for a social worker to arrange for Marcelo's care. The social worker took Marcelo into protective custody and placed him in a foster home before he was moved to the home of a paternal aunt, Cathy H. She is now Marcelo's prospective adoptive mother.

Marcelo's family had been the subject of a previous dependency proceeding in Los Angeles County. Marcelo had been removed from the parents' custody in May 2009, for general neglect caused by chronic alcoholism. In the prior proceeding, the juvenile court found that the parents had a history of violence toward each other and that Father had kicked Mother while Marcelo was present. Mother had prior drug- and alcohol-related arrests, including a July 2008 arrest in Las Vegas for driving under the influence. In November 2008, Father was arrested in Laughlin, Nevada, for domestic violence toward Mother. Mother was hospitalized for her injuries and Marcelo was placed in protective custody until her discharge from the hospital.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

The social worker assigned to the prior dependency case reported that Father and Mother worked "really, really hard at being sober," but also described their alcoholism as " 'so bad that [Father] has seizures from it' and [Mother] 'had flares of Pancreatitis.' " Nevertheless, the parents complied with their case plans and the family was reunited in February 2011.

In the present case the juvenile court detained Marcelo in foster care and ordered supervised visits. It also ordered both parents to submit to random drug testing, to avoid use or possession of alcohol or drugs without a prescription, and to attend Alcoholics Anonymous meetings at least three times per week. Father and Mother failed to appear at the next four scheduled hearings. On each occasion, they claimed illness prevented them from attending court.

In a report prepared for the jurisdiction and disposition hearing, Mother stated she had a 15-year history of substance abuse. She met Father in an alcohol rehabilitation program and had been sober for six or seven years when she relapsed in 2008. After regaining sobriety during the prior dependency case, Mother claimed to have remained alcohol free until about three days before the family's aborted trip to the hospital. Drinking caused her to have a pancreatitis attack, which caused Father to panic and drive her to the hospital. Mother claimed her alcohol use did not impact her ability to parent Marcelo.

Father was in a similar state of denial concerning the effect of his alcohol use on Marcelo. He told the social worker he had been sober for six years before he and Mother " 'slipped' " when " 'the economy got bad,' " leading to the prior dependency case. Father described himself and Mother as " 'good parents' " and claimed that his drinking never affected Marcelo because " 'I was a happy drunk.' " Father denied any domestic violence in his relationship with Mother, ignoring the 2008 incident in Laughlin, Nevada. He told the social worker that he understood " 'maintaining sobriety is key,' " and offered the opinion that " 'it's easy to stay sober.' "

Father's sister and Marcelo's prospective adoptive mother, Cathy H., described both parents as " 'habitual liars,' " who were " 'constantly intoxicated.' " She said that Father had been drinking heavily for at least 25 years. She recalled one instance when she arrived at a hotel where the family was staying to find "the mother passed out inside on a couch and the child running around outside in a dirty diaper." On another occasion, she found Mother passed out on the couch while Marcelo "was attempting to crawl inside the oven." Cathy H. told the social worker that the parents were violent toward each other. "She stated she has seen the mother and father 'swinging at each other' and the police had to intervene."

Father's brother, Joseph B., is a clinical psychologist who works in the juvenile dependency system in Contra Costa County. He offered an even bleaker assessment of the parents' substance abuse and parenting skills. He concluded that "both of Marcelo's parents demonstrate behaviors consistent with neurophysiological damage as a result of chronic extensive and intensive substance abuse. Neither is capable of significant LASTING change and this recent incident is not a relapse, but the continuation of an entrenched behavior."

The parents again failed to appear at the August 31 jurisdiction and disposition hearing, claiming illness. The juvenile court denied a continuance, reasoning the parents "obviously in the past have had a severe alcohol problem. According to the most recent information, they continue to abuse alcohol. And their explanation for why they're not here today is not a valid basis. [¶] I find it's not good cause for continuance." It sustained the petition and bypassed reunification services for either parent based on section 361.5, subdivision (b)(13).[2] It scheduled a hearing on the termination of parental rights.

On December 14, 2011, Father filed a section 388 request to change the dependency court's order to bypass family reunification services. His request cited the following changed circumstances: "The father is in a substance abuse program and he has completed a parenting class. He attends 12 step meetings on a regular basis and has a sponsor. He is well known for his participation and positive influence in the 12 step program . . . ." The trial court denied the request without a hearing on the grounds that it did not state new evidence of a change of circumstances and that the proposed change of order would not promote the best interests of the child.

Neither parent personally appeared for the section 366.26 hearing and the matter was continued. The social worker reported that Mother had attended 11 visits with Marcelo and missed two. Mother admitted one of these absences was due to alcohol use. She claimed to have missed the other visit because she lacked transportation. Father had attended eight visits and missed five. He cited work and other appointments as reasons for missing the visits. The social worker reported that, when the parents attended, these visits appeared to go well and that the parents showed appropriate affection for their son. Marcelo "has not shown significant distress when leaving his

---

[2] Section 361.5, subdivision (b)(13) provides, "(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (13) That the parent or guardian of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention . . . ."

parents at the end of each visit," and his adjustment "to returning home to his caregiver [has been] normal and without behavioral issues." Although telephone visits were regularly scheduled between the parents and Marcelo, Marcelo consistently said he did not wish to speak to his father.

Father testified at the hearing that their family environment "was wonderful." He described playing baseball "daily" with Marcelo, playing board games at night and helping Marcelo with his bath. Once a week, Father took Marcelo "bowling or out to get yogurt or take him to train stations. He loved trains. And, in fact, once a month we'd take him on a train ride to Ventura, and it was wonderful." He described Marcelo as excited to see his parents during the supervised visits and said the child often asked when he would be able to come home. Father testified that Marcelo sometimes cried when the visits were over and that he would fight to stay with his parents. Father believed Marcelo was "very closely bonded" to him. At the time of his testimony, Father was just finishing up a 90-day alcohol treatment program. Mother agreed with Father's description of their family life.

At the conclusion of the hearing, the juvenile court found that Marcelo is adoptable and that the beneficial relationship exception did not apply. First, the court noted that Father had not maintained regular visitation because he missed several visits in September, October and December. In addition, the court noted, "I don't have any evidence that says when the parents are not visiting that Marcelo is suffering distress. . . . And in fact, I don't see that there's distress when he separates at the end of a visit."

The juvenile court also found that, while the parents "dearly love" their son, they were not able to remain sober. Alcohol use caused them to miss court hearings and visits with Marcelo. The court reasoned that the parents "had more than just a relapse. I think that the 14 months that you had in L.A. County didn't work . . . . I think your disease is rampant, and I think you're going to need a lot more time to demonstrate that it doesn't control your life. In the meantime, I don't think it's fair to your son to have to wait." It found the parents' warm relationship with Marcelo was not enough to outweigh the benefit he would get from a stable adoptive home. Accordingly, the juvenile court terminated the parental rights of both Mother and Father, found Marcelo adoptable, and selected adoption as his permanent plan.

*Section 388*

Father contends the juvenile court abused its discretion when it denied his section 388 petition without an evidentiary hearing. We are not persuaded.

To prevail on a section 388 petition, the moving party must establish that new evidence or changed circumstances exist so that the proposed

change in the court's order would promote the best interests of the child. (§ 388, subds. (a), (b); *In re Marilyn H.* (1993) 5 Cal.4th 295, 309–310 [19 Cal.Rptr.2d 544, 851 P.2d 826].) Unless the moving party makes a prima facie showing of both elements, the petition may denied without an evidentiary hearing. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 807–808 [92 Cal.Rptr.2d 20].) The determination of whether to change an existing order is "committed to the sound discretion of the juvenile court, and [its] ruling should not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [27 Cal.Rptr.2d 595, 867 P.2d 706].) An abuse of discretion occurs when the juvenile court has exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination. (*Ibid.*)

Father's participation in 12-step meetings, completion of a substance abuse program and attendance at parenting classes were not prima facie evidence of a change in circumstances because Father had already received extensive treatment for his alcoholism. That treatment allowed him achieve a period of sobriety, but it did not prevent him from relapsing a scant four months after reunifying with Marcelo. Having once again lost custody of Marcelo, and reentered alcoholism treatment, Father continued to deny both his history of domestic violence and the negative impact his alcoholism has on Marcelo. He was so deeply in denial of his condition that he was able to opine, " 'it's easy to stay sober,' " even as his inability to stay sober was destroying his parental rights. On these facts, the juvenile court properly found that Father's belated choice to return to treatment is no guarantee that he will achieve or maintain the sobriety required for him to be a parent to Marcelo. There was no abuse of discretion.

### Beneficial Relationship

■   Section 366.26 provides that if parents have failed to reunify with an adoptable child, the juvenile court must terminate their parental rights and select adoption as the permanent plan for the child. The juvenile court may choose a different permanent plan only if it "finds a compelling reason for determining that termination [of parental rights] would be detrimental to the child [because]: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) Here, both parents contend the trial court erred when it failed to apply this beneficial relationship exception to avoid the termination of their parental rights. We conclude the juvenile court's finding that the exception did not apply was supported by substantial evidence. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827 [86 Cal.Rptr.2d 739].)

"To trigger the application of the parental relationship exception, the parent must show the parent-child relationship is sufficiently strong that the child would suffer detriment from its termination." (*In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 449 [38 Cal.Rptr.3d 876].) A beneficial relationship "is one that 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 [32 Cal.Rptr.2d 535].) The existence of this relationship is determined by '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' (*Id.* at p. 576.)" (*In re Amber M.* (2002) 103 Cal.App.4th 681, 689 [127 Cal.Rptr.2d 19].)

■ Overcoming the statutory preference for adoption and avoiding the termination of parental rights requires the parent to show both that he or she has maintained regular visitation with the child and that the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).) "Sporadic visitation is insufficient to satisfy the first prong . . ." of the exception. (*In re C.F.* (2011) 193 Cal.App.4th 549, 554 [121 Cal.Rptr.3d 881].) Satisfying the second prong requires the parent to prove that "severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466 [118 Cal.Rptr.2d 482].) Evidence that a parent has maintained " 'frequent and loving contact' is not sufficient to establish the existence of a beneficial parental relationship." (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1315–1316 [117 Cal.Rptr.3d 568].)

Here, the juvenile court rejected the beneficial relationship exception finding the parents' loving relationship with Marcelo was not sufficiently beneficial to him to "outweigh the benefits he gets from having a stable home." Substantial evidence supports that finding.

The prior dependency case established that the parents' alcohol abuse caused them to neglect Marcelo and expose him to domestic violence. After that case terminated with the family's reunification, the parents promptly relapsed. More ominously, both denied the extent of their alcohol abuse and its negative impact on their ability to parent Marcelo. Both parents missed multiple supervised visits with Marcelo, as well as numerous court hearings,

because of their alcohol abuse. Even after the present dependency proceeding began, the parents were involved in alcohol-fueled violence toward each other. Simi Valley firefighters were called "to the parents' home on July 6, 2011 for a fire emergency related to an alcohol overdose and on July 11, 2011 because a closet door fell on an intoxicated female."

Despite these incidents, Father testified that they were a "very loving family," and that their family environment was "wonderful." Mother agreed with his assessment. The social worker testified that Marcelo sometimes seemed excited to see his parents and that the family was affectionate with each other during their supervised visits. On the other hand, Marcelo had no difficulty separating from his parents when the visits were over and "his adjustment from visiting with his parents to returning home to his caregiver [is] normal and without behavioral issues." Marcelo has lived nearly half of his life with his current caregivers, a paternal aunt and her husband, who have been involved with him since his birth and who have provided him with "a loving, safe and nurturing home environment."

█ This constitutes substantial evidence supporting the juvenile court's findings that Marcelo would not suffer detriment from termination of the parent-child relationship, and that maintaining the relationship would not promote his well-being " 'to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re Amber M., supra*, 103 Cal.App.4th at p. 689.) The parents demonstrated that they have a warm and affectionate relationship with their son. Because they continue to abuse alcohol and each other, however, they have not demonstrated an ability to provide Marcelo, over the long term, with a stable, safe and loving home environment. Accordingly, the juvenile court properly found there was no beneficial parental relationship sufficient to overcome the statutory preference for adoption.

## Conclusion

We affirm the trial court's orders, which rescue Marcelo and allow him the opportunity for a normal childhood. We are sorry for the parents who, notwithstanding their alcoholism, love their son. This is not enough. To the extent they had a choice, they have chosen alcohol instead of their son. If

deeply entrenched alcoholism deprived them of choice, it matters not. The Legislature has determined that the protection of the child is paramount. The orders denying the section 388 petition and the order terminating parental rights are affirmed.

Gilbert, P. J., and Perren, J., concurred.