Filed 2/25/14  In re A.V. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re A.V., et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B249746 (Super. Ct. Nos. J1395401 & J1395402) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD PROTECTIVE SERVICES, Plaintiff and Respondent, v. E.G., Defendant and Appellant. | |

E.G. (mother) appeals the order terminating her parental rights to her minor children A.V. and H.W., and establishing adoption as their permanent plan.  (Welf. & Inst. Code,[1] § 366.26.)  Mother contends the court erred in finding that the parental relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) did not apply.  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

FACTS AND PROCEDURAL HISTORY

In April 2011, Santa Barbara County Child Protective Services (CPS) filed a section 300 petition as to three-year-old A.V. and one-year-old H.W. after mother was arrested for possessing and being under the influence of methamphetamine. The drugs and two smoking pipes were found during a search of mother's residence and were accessible to the children.[2] The children were placed with their maternal grandparents, with whom they had previously lived.

In its jurisdiction and disposition report, CPS stated that the children were doing well in their placement. Mother had been approved for nightly two-hour supervised visits with the children, contingent upon her remaining drug free. After she failed two drug tests, visitation was suspended until she could provide two consecutive clean tests. At the jurisdiction and disposition hearing, the court sustained the children's removal and ordered mother to participate in a case plan that included a mental health assessment, Family Drug Treatment Court, outpatient drug treatment with random drug testing, and a parenting program.

A.V. and H.W. began an extended visit with mother in November 2011. At the sixth-month review hearing on December 12, 2011, the children were returned to mother pursuant to a family maintenance program. Four months later, the children were removed again and returned to their maternal grandparents after mother tested positive for methamphetamine. Mother was granted additional services with supervised visits. At the 12-month review hearing, the court adopted CPS's recommendation and granted mother an additional six months of services.

On September 1, 2012, mother was arrested and charged with driving under the influence and willful cruelty to a child. At the 18-month review hearing on November 29, 2012, reunification services were terminated and the matter was set for a section 366.26 hearing.

---

[2] Mother's son I.D. (born in May 2000) was also a subject of the petition, but mother does not challenge the disposition as to him and he is not a party to the appeal. A.V. and H.W.'s fathers never appeared in the proceedings and are not parties to the appeal.

In its section 366.26 report, CPS recommended that mother's parental rights be terminated and that adoption by the maternal grandparents be selected as the children's permanent plan. CPS reported that the children were comfortable in their placement and had adjusted without much difficulty. The social worker observed three visits mother had with the children after her release from jail in December 2012. At the end of those visits, the children were in a good mood and were ready to return to their maternal grandparents.

At the section 366.26 hearing, mother testified that she had visited the children every day prior to her incarceration. While she was in jail, she wrote to the children twice a week and spoke to them on the telephone. Drawings she received from the children were offered as proof of a beneficial parent-child relationship. Mother also gave a differing account of her most recent visits with the children. According to mother, H.W. stomped her feet and yelled, "Mommy," and A.V. did not want to leave mother's side. When the children left, they looked back to make sure mother was still in sight.

At the conclusion of the hearing, the court terminated mother's parental rights to A.V. and H.W. and selected adoption as their permanent plan. The court concluded that the parental relationship exception to adoption did not apply because (1) "[t]here was a break in the visitation" as a result of mother's drug use; and (2) even if a beneficial relationship existed, mother had failed to demonstrate that the children would be greatly harmed if the parent-child relationship were severed. Mother timely appealed.

DISCUSSION

Mother contends the order terminating her parental rights to A.V. and H.W. must be reversed because she met her burden of proving that the parental relationship exception to adoption applied. (§ 366.26, subd. (c)(1)(B)(i).) We disagree.

"By the time of a section 366.26 hearing, the parent's interest in reunification is no longer an issue and the child's interest in a stable and permanent placement is paramount. [Citations.] . . . The child has a compelling right 'to [have] a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' [Citation.] Adoption is the Legislature's first choice because it gives the child the best chance at such a commitment from a responsible

3

caretaker. [Citations.]" (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348.) "If the court finds that a child may not be returned to his or her parent and is likely to be adopted, it must select adoption as the permanent plan unless it finds that termination of parental rights would be detrimental to the child under one of [several] specified exceptions. [Citations.]" (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.)

The parental relationship exception to adoption applies where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) The parent has the burden of establishing this exception. (*In re Derek W., supra*, 73 Cal.App.4th at p. 826; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1345.) "'To trigger the application of the parental relationship exception, the parent must show the parent-child relationship is sufficiently strong that the child would suffer detriment from its termination.' [Citation.] A beneficial relationship 'is one that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." [Citation.] . . .'" (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643.) Only in the "extraordinary case" can a parent establish the exception because the permanent plan hearing occurs "after the court has repeatedly found the parent unable to meet the child's needs." (*In re Jasmine D., supra*, 78 Cal.App.4th at p. 1350.)

We review the juvenile court's determination that the parental relationship exception did not apply under the substantial evidence standard. (*In re Marcelo B., supra*, 209 Cal.App.4th at p. 642; *In re Naomi P.* (2005) 132 Cal.App.4th 808, 824; *In re Derek W., supra*, 73 Cal.App.4th at p. 827; compare *In re Jasmine D., supra*, 78 Cal.App.4th at p. 1351 [applying abuse of discretion standard of review]; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314–1315 [applying both substantial evidence and abuse of discretion standards of review in a two-step process].)[3] We view the evidence in the

---

[3] "The practical differences between the [substantial evidence and abuse of discretion] standards of review are not significant. '[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. . . . Broad deference must be shown to the trial judge. The reviewing court should

4

light most favorable to respondent, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) "It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630.) "The appellant has the burden of showing the [juvenile court's] finding . . . is not supported by substantial evidence. [Citation.]" (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.) "Substantial evidence is reasonable, credible evidence of solid value such that a reasonable trier of fact could make the findings challenged. . . . [Citation.]" (*In re Adoption of Myah M.* (2011) 201 Cal.App.4th 1518, 1539.)

The first prong of the parental relationship exception is that "[t]he parents have maintained regular visitation and contact with the child[ren]." (§ 366.26, subd. (c)(1)(B)(i).) We need not consider whether this prong was met here because substantial evidence supports the juvenile court's finding that mother failed to establish the second prong, i.e., that "the child[ren] would benefit from continuing the relationship." (*Ibid.*) "Satisfying the second prong requires the parent to prove that 'severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent.' [Citation.] Evidence that a parent has maintained '"frequent and loving contact" is not sufficient to establish the existence of a beneficial parental relationship.' [Citation.]" (*In re Marcelo B., supra*, 209 Cal.App.4th at p. 643.)

---

interfere only "'if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' . . . "' [Citations.] However, the abuse of discretion standard is not only traditional for custody determinations, but it also seems a better fit in cases like this one, especially since the statute now requires the juvenile court to find a 'compelling reason for determining that termination would be detrimental to the child.' (§ 366.26, subd. (c)(1)[(B)].) That is a quintessentially discretionary determination. The juvenile court's opportunity to observe the witnesses and generally get 'the feel of the case' warrants a high degree of appellate court deference." (*In re Jasmine D., supra*, 78 Cal.App.4th at p. 1351.)

"[A] child should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree but does not meet the child's need for a parent." (*In re Jasmine D., supra*, 78 Cal.App.4th at p. 1350.)

Substantial evidence supports the court's finding that mother failed to meet her burden of proving the parental relationship exception to adoption applied. In making its ruling, the court concluded that mother's "self-serving statements" indicating that she and the children shared a beneficial relationship were not enough to overcome the strong presumption in favor of adoption. As CPS notes in its brief, at the time of the section 366.26 hearing "[A.V.] had been out of her mother's care for almost a third of her life and [H.W.] for almost half of her life." Moreover, the children have spent that time with their maternal grandparents, who are now the prospective adoptive parents. Although the social worker observed that most of mother's visits with the children were "playful and fun," the children were "ready to go back" to their maternal grandparents' home after the visits and did not exhibit any signs of distress as a result of the separation. This evidence, viewed in the light most favorable to the judgment, supports the finding that there was no "'. . . *substantial*, positive emotional attachment such that the [children] would be *greatly* harmed . . .'" if their relationship with mother were terminated. (*In re Marcelo B., supra*, 209 Cal.App.4th at p. 643.)

In challenging the court's findings on this point, mother relies on a statement in the 18-month status review report indicating that "[A.V.] and [H.W.] both look to their mother for affection during her visits and [A.V.] often cries and states that she misses her mother." That statement, however, related to visits that took place over six months prior to the section 366.26 hearing, before mother was arrested again in September 2012. The social worker who observed visits that took place *after* mother's release from jail in December 2012 testified that the children did not exhibit any signs of distress or unhappiness when the visits ended and appeared ready to return to the home of their maternal grandparents. Although mother gave a conflicting account of the visits, the court characterized her representations as "self-serving" and found the social worker's

6

stated observations to be more credible.  We will not disregard this credibility determination.  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Mother asserts that "[w]hen evaluating the beneficial parent-child exception, it appears that the juvenile court here relied on a belief that the maternal grandparents would maintain [mother's] relationship with the girls."  No record citation is given in support of this assertion.  Although mother correctly notes the court granted her continued monthly visitation with the children at the maternal grandparents' request, the court made clear that CPS had "the discretion to discontinue or reduce visitation if it is determined that visits are detrimental to the well-being of the children."  Contrary to mother's assertion, it was not improper for the court to issue an order of visitation under these circumstances.  (See *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1394.)

The judgment (order terminating parental rights and selecting adoption as the permanent plan) is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

7

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Ernesto Paz Rey, under appointment by the Court of Appeal, for Appellant.

Dennis A. Marshall, County Counsel, Toni Lorien, Deputy County Counsel, for Respondent.