Filed 9/22/14  In re J.G. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re J. G. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B254555<br>(Super. Ct. Nos. J069057, J069058, J069124)<br>(Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>C. R.,<br><br>   Defendant and Appellant. | |

      C. R. (Mother) appeals an order of the juvenile court terminating her parental rights to her minor children J. G., D. R., and C. R., persons coming under the juvenile court law.  (Welf. & Inst. Code, §§ 300, 366.26.)[1]  The trial court found the children were adoptable.  We conclude, among other things, that the court did not err by finding the beneficial relationship exception to termination of parental rights did not apply in this case.  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

FACTS

On September 25, 2012, the Ventura County Human Services Agency (HSA) filed a juvenile dependency petition (§ 300) alleging Mother tested positive "for amphetamines" twice during her "prenatal appointments." HSA said her children J. G., age four, and D. R., nine months, were at risk because of Mother's substance abuse and incidents of domestic violence in the home.

Mother admitted using methamphetamine while pregnant with C. R. After C. R.'s birth, HSA filed a dependency petition and recommended that the infant be detained. It said Mother's history of using methamphetamine, marijuana and heroin "interferes with her ability to provide adequate care and support for the child" and placed the child at "substantial risk of suffering serious physical harm." A social worker placed the infant in a "confidential foster home." The two older children were also placed in foster homes.

The juvenile court sustained the petitions and ordered HSA to provide family reunification services to Mother. Mother received a case plan and services including supervised visitation with the children and domestic violence "referrals." She was required to take drug tests.

In a status review report filed July 31, 2013, HSA recommended family reunification services be terminated. It said Mother had not shown "progress and benefit from her case plan services." Mother had "not complied with all required drug tests." She "failed to actively participate in case plan services." She did not develop "a specific domestic violence relapse prevention plan for herself." She "rarely demonstrated an interest in her children's well-being."

A therapist determined that J. G. experienced emotional problems as a result of her visits with Mother. The therapist concluded Mother's visits with the child were "detrimental" to the child's "well being." The juvenile court terminated the visits with J. G. A foster care nurse notified HSA that Mother threatened to harm herself if "her children were taken away."

2

After a contested hearing, the juvenile court terminated family reunification services and set a section 366.26 hearing. It found, among other things, that: 1) Mother did not demonstrate "an ability to provide support and care for her children," 2) she "has not consistently attended one substance abuse program," 3) she did not develop a "sober support system," 4) she was not "receptive to feedback, minimal monitoring of her children's health, safety and well being," and 5) her progress in "alleviating or mitigating the causes necessitating placement has been minimal."

HSA continued to provide supervised visitation between Mother and the children. During discussions with social workers about visitation, Mother "became very upset and agitated." Social workers made "arrangements for a security guard to be available during" her visits to their office.

On November 27, 2013, Mother "grabbed" a social worker's arms and "proceeded to shove her" near a wall. The social worker sustained scratches on her "chest, arms and neck." The court subsequently issued a restraining order against Mother. HSA notified the juvenile court that "mother currently has pending charges for misdemeanor battery."

In its section "366.26 WIC Report," HSA recommended that the juvenile court terminate Mother's parental rights and that the children "be freed for adoption by their prospective adoptive parents."

On November 15, 2013, Mother filed a request to "change court order." She requested reinstatement of family reunification services. The juvenile court denied the request. It found that she 1) had not made a showing "of changed circumstances" and 2) had not shown her request was in the best interests of the children.

At the contested section 366.26 hearing, Mother testified she wanted to maintain a relationship with her children. Her counsel argued she "should remain a beneficial part of their lives, even though she's not in a position to provide safe and secure housing at this time."

3

The juvenile court terminated Mother's parental rights and ruled adoption is the "permanent plan." It found the children were "adoptable" and there were "no exceptions" to adoption.

## DISCUSSION

### *The Beneficial Relationship Exception*

Mother contends the juvenile court erred by terminating her parental rights. She claims the evidence shows that she established the beneficial relationship exception to termination of parental rights. We disagree.

We review the juvenile court's orders to determine whether substantial evidence supports its findings. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827.) We do not weigh the evidence or decide the credibility of the witnesses.

"[I]f parents have failed to reunify with an adoptable child, the juvenile court must terminate their parental rights and select adoption as the permanent plan for the child." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.) There is an exception to terminating parental rights if the parent meets a "burden to show exceptional circumstances." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 574.) Under the beneficial relationship exception, the parent must show "termination would be detrimental to the minor" because: 1) the parent has "maintained regular visitation and contact with the minor" and 2) "the minor would benefit from continuing the relationship." (*Ibid.*)

The juvenile court could reasonably find Mother did not meet her burden to show the beneficial relationship exception applied. The evidence supports a finding that Mother did not meet the first prong of that exception because she did not maintain regular visitation with the children. Mother notes that a March 29, 2013, HSA status review report indicated that she had "weekly supervised visitations, which [she] has consistently attended."

But Mother did not continue to have regular visitation. In HSA's section 366.26 WIC report, the social worker noted that Mother was offered weekly visits with D. R. and C. R. between July and October 2013. But Mother "only participated in five visits with the children" during that period. Her visits with J. G. were suspended. The

4

social worker stated, "[M]other *has not been consistent in visitation and has had limited contact with the children*, due to her lack of case plan progress and her own unresolved substance abuse issues." (Italics added.)

The juvenile court could also reasonably find the evidence did not show the children would benefit from a continuing relationship with Mother. "A beneficial relationship 'is one that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.'" (*In re Marcelo B.*, *supra*, 209 Cal.App.4th at p. 643.)

Mother contends HSA's "[r]eports of [her] visitation show that it has gone well." But she selectively cites reports for an earlier review period. Her visits with J. G. were terminated because they were detrimental to the child. In the most recent HSA report, the social worker said, "During visitation, the children appear to have a difficult time with their mother; the mother does not appear to display an understanding of age-appropriate interaction . . . ." Mother did not "respond appropriately to their distress cues . . . ." HSA said continued visitation is not "in the best interest of the children . . . ."

Moreover, "[t]he parent must do more than demonstrate 'frequent and loving contact[,]' [citation] an emotional bond with the child, or that parent and child find their visits pleasant." (*In re Derek W.*, *supra*, 73 Cal.App.4th at p. 827.) "Instead, the parent must show that he or she occupies a 'parental role' in the child's life." (*Ibid.*) Parents must make a substantial showing in cases where they have failed "to reunify and establish a parental . . . relationship" or where they do not advance "beyond supervised visitation." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 51.)

In the section 366.26 report, HSA said, "The children appear to display a high level of attachment to their prospective adoptive families, as they currently each have a stable, consistent, and supportive home." "[C. R.] has been out of the mother's care and with the prospective adoptive family since birth." "[D. C.-R.] has been in the care of the current foster mother since she was nine months old, where she has been loved and supported, as well as, provided with stability and security." J. G.'s "emotional

5

stability has drastically improved and she has gained a strong attachment and comfort with the foster mother."

By contrast, HSA's assessment was not positive regarding Mother's relationship with the children. It said, "The children do not appear to have a strong attachment to the mother nor has the mother played a parental role in the children's lives for over a year. They do not have a significant child-parent relationship with the mother." C. R. "deserves stability and security, as the mother has not demonstrated the ability to do this."

Mother's actions placed these children at risk for abuse and neglect. At the hearing, Mother's counsel conceded that Mother lacked the ability to currently provide a safe and secure home for the children. HSA said Mother had "unresolved substance abuse issues." Mother did not comply with the case plan. HSA noted she had anger management problems and had attacked a social worker. Mother has not shown that the juvenile court erred.

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.


6

Bruce A. Young, Judge

Superior Court County of Ventura

_____

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Leroy Smith, County Counsel, Patricia McCourt, Assistant County Counsel, for Plaintiff and Respondent.