Filed 11/17/14  In re Elijah C. CA2/6

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re ELIJAH C., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B254919 (Super. Ct. No. J69112) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,      Petitioner and Respondent, v. E.C.,      Objector  and Appellant. | |

E.C. (mother) and Keith R. (father) appeal from an order terminating their parental rights to their son, Elijah C. (child), and selecting adoption as the permanent plan.  (Welf. & Inst. Code, § 366.26.)[1]  Mother contends that the juvenile court erroneously failed to apply the beneficial relationship and sibling relationship exceptions to the termination of her parental rights.  (§ 366.26, subds. (c)(1)(B)(i), (c)(1)(B)(v).)  Father's appointed counsel filed an opening brief pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835.  Counsel found no arguable issues and requested that father be permitted to personally file a supplemental opening brief.  We deny the request because there has been no "showing

---

[1] All statutory references are to the Welfare and Institutions Code.

of good cause that an arguable issue does, in fact, exist." (*Id*., at p. 844.)  We dismiss father's appeal.  As to mother, we affirm.

*Background*

Child was born in June 2012 and is now two years old.  Child has a serious congenital heart defect that requires either "a series of three open heart procedures or a heart transplant."  Child's medical team decided that he would have the three surgical procedures.  Child had the first surgery shortly after birth.

In November 2012, when child was five months old, a juvenile dependency petition was filed.  The petition alleged that mother "has not followed through with the necessary medical appointments" and that "child continues to lose weight and has had to be hospitalized to monitor his situation due to the mother's failure to follow medical direction."  The petition further alleged that father "lives out of state and is unable to provide adequate care for the child's medical[] needs."  The day after the petition was filed, the child was ordered to be detained out of mother's home.

In March 2013 the petition was sustained after an uncontested hearing.  The juvenile court declared child to be a dependent of the court.  It ordered that custody of the child be removed from the parents and that family reunification services be provided to mother.  In September 2013 the court terminated reunification services and set the matter for a section 366.26 hearing.

*Beneficial Relationship Exception*

"By the time of a section 366.26 hearing, the parent's interest in reunification is no longer an issue and the child's interest in a stable and permanent placement is paramount. [Citations.] . . . The child has a compelling right 'to [have] a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' [Citation.]  Adoption is the Legislature's first choice because it gives the child the best chance at such a commitment from a responsible caretaker. [Citations .]" (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348.)

"If the court finds that a child may not be returned to his or her parent and is likely to be adopted, it must select adoption as the permanent plan unless it finds that

2

termination of parental rights would be detrimental to the child under one of [several] specified exceptions. [Citations.]" (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.) The beneficial relationship exception applies if (1) "[t]he parents have maintained regular visitation and contact with the child and [2] the child would benefit from continuing the relationship." (§ 336.26, subd. (c)(1)(B)(i).) The parents have the burden of establishing the exception. (*In re Derek W.*, *supra*, 73 Cal.App.4th at p. 826; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1345.)

We review the juvenile court's determination under the substantial evidence standard. (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642; *In re Naomi P.* (2005) 132 Cal.App.4th 808, 824; *In re Derek W., supra,* 73 Cal.App.4th at p. 827; contra, *In re Jasmine D., supra,* 78 Cal.App.4th at p. 1351 [reviewing court should apply abuse of discretion standard].) We view the evidence in the light most favorable to respondent, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) "It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630.) "The appellant has the burden of showing the finding [i.e., lack of a beneficial relationship] . . . is not supported by substantial evidence. [Citation.]" (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.) "Substantial evidence is reasonable, credible evidence of solid value such that a reasonable trier of fact could make the findings challenged . . . . [Citation.]" (*In re Adoption of Myah M.* (2011) 201 Cal.App.4th 1518, 1539.)

Respondent concedes that the first prong of the beneficial relationship exception - regular visitation and contact with the child - "is satisfied by the record." On the other hand, respondent argues that substantial evidence supports the juvenile court's finding that mother failed to prove the second prong - "the child would benefit from continuing the relationship." (§ 336.26, subd. (c)(1)(B)(i).) "Satisfying the second prong requires the parent to prove that 'severing the natural parent-child relationship would deprive the child of a *substantial,* positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A . . . parent who has failed to reunify with an adoptable child may

3

not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent.' [Citation.] Evidence that a parent has maintained ' "frequent and loving contact" is not sufficient to establish the existence of a beneficial parental relationship.' [Citation.]" (*In re Marcelo B.*, *supra*, 209 Cal.App.4th at p. 643.) "[A] child should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree but does not meet the child's need for a parent." (*In re Jasmine D., supra,* 78 Cal.App.4th at p. 1350.)

Viewing the evidence in the light most favorable to respondent, we conclude that a reasonable trier of fact could find that mother's contact with the child had not continued or developed " 'a *substantial,* positive emotional attachment such that the child would be *greatly* harmed' " if the relationship were terminated. (*In re Marcelo B.*, *supra*, 209 Cal.App.4th at p. 643.) In January 2014 a social worker reported that the child "has demonstrated a significant and growing bond with his current substitute care providers who are his prospective adoptive parents and seeks them out for comfort." The social worker noted that in August 2013 the child "began to cry once inside the visitation room with his mother." Mother said "that she 'thought he was crying for his foster mother.' " During the following week's visit, the child "again cried and reached for his care provider when being taken from her to go with the mother for visitation." Mother said "that she was 'saddened to see that he was becoming so attached to his foster mother, but that she understood.' " During a later visit in August 2013, the child showed "stranger anxiety toward the mother at the beginning" of the visit. During a visit in November 2013, the child "whined" when he was separated from his foster father. He "began whining and reaching up toward and for the foster father when returned to him at the end of the visit." At a subsequent visit in November 2013, the child "was upset, cried and reached for the Field Based Case Aide Supervisor when the mother took him from his stroller." "[A]t the end of the visit, the child 'babbled in the stroller and was eager to get out of the stroller once he saw foster dad.' "

4

The social worker expressed "concern" about the "quality of the mother's visits." She noted that "during a majority of visits, the child sleeps for a minimum of 30-40 minutes despite continual redirection from the Field Based Case Aides that the purpose of the mother's visits is to keep [the child] engaged and to interact with him." The aides have "frequently redirected [mother] not to use her cell phone during visitation with her son." Mother "often meets these attempts at redirection with 'rolling her eyes.' " On one visit "mother was redirected to stop 'playing loud rap music on her phone.' "

The social worker stated that, "during doctor's appointments attended by the mother, the [child] showed distress on many, if not virtually all occasions when being separated from the substitute care providers to be transferred to [mother]." At a doctor's appointment in November 2013, the child's foster father handed him over to mother. " 'Immediately [the child] began screaming and crying. He continued to [cry] for over 30 minutes. [Mother] would not put him down and verbally said, 'You can cry the whole visit. I'm not putting you down.' " According to the foster parents, "at subsequent doctor's visits, . . . the child continues to scream and cry when being held by the mother, and . . . the mother continues to ignore [the child's] cries and to hold him despite his protests."

Accordingly, "[t]his is not the extraordinary case where an adoption should have been foreclosed by the exception provided in section 366.26, subdivision (c)(1)(A) [now (c)(1)(B)(i) ]." (*In re Jasmine D., supra,* 78 Cal.App.4th at p. 1352.) "[T]he juvenile court properly found there was no beneficial parental relationship sufficient to overcome the statutory preference for adoption." (*In re Marcelo B.*, *supra*, 209 Cal.App.4th at p. 644.)

*Sibling Relationship Exception*

The child has an older sibling who lives with mother. Mother contends that the juvenile "court erred in finding that the sibling relationship exception [to the termination of parental rights] did not apply." (Bold and capitalization omitted.) The sibling relationship exception (§ 366.26, subd. (c)(1)(B)(v)) "applies where the juvenile court finds that 'substantial interference with a child's sibling relationship' is a 'compelling

5

reason' to conclude that adoption would be detrimental to the child." (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1317.) "[T]he application of this exception will be rare, particularly when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount. [Citation.]" (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014.)

During closing argument at the section 366.26 hearing, mother's counsel stated: "Mother is seeking to prevent the termination of parental rights by relying on the beneficial-relationship exception." Counsel did not mention the sibling relationship exception. Mother asserts that, despite counsel's silence on this exception, she has not forfeited the issue because she "did discuss" the sibling relationship in a letter to the court and "the court made a ruling on the issue."

The discussion in the letter was insufficient to raise the sibling relationship exception. Mother wrote, "There is not a day that doesn't go by without [the child's] sister asking 4 her brother, or picking up the phone asking if she can talk 2 her brother."

In claiming that the juvenile court ruled on the application of the sibling relationship exception, mother cites page 385 of the Clerk's Transcript. This page contains findings from a form that was printed before the section 366.26 hearing. After the hearing the court signed the form, which states that the court considered "factors" relating to "any sibling relationships." The form does not say that the court considered the statutory sibling relationship exception and found it to be inapplicable. At the conclusion of the section 366.26 hearing, the court orally referred only to the beneficial relationship exception. It stated that the issue was whether mother can "show an exception, . . . which is the parental relationship, the beneficial-relationship, the parenting relationship [exception]." Thus, the juvenile court did not rule on the application of the sibling relationship exception.

Section 366.26 does not require the juvenile court to "give sua sponte consideration to the sibling relationship exception when no party has argued it applies. . . . And as the juvenile court did not have a sua sponte duty to consider the sibling relationship exception, [mother's] failure to raise the exception at the section

6

366.26 hearing forfeits the issue for purposes of appeal." (*In re Daisy D.* (2006) 144 Cal.App.4th 287, 292.) "[A] determination concerning the sibling relationship exception raises factual questions that are unsuitable for resolution on appeal." (*Ibid.*)

Even if mother had raised the sibling relationship exception and the court had found that it did not apply, mother has failed to carry her burden of showing that the trial court's finding is not supported by substantial evidence. In her opening brief, mother notes that the siblings "lived together for the first five months of [the child's] life" and that the child's sister visited him twice in January 2013 and once in April 2013. Mother does not refer us to any other evidence of a sibling relationship. This is insufficient to invoke the exception. "To show a substantial interference with a sibling relationship the parent must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child. Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship." (*In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 952.)

*Disposition*

Father's appeal is dismissed. As to mother, the judgment (order terminating her parental rights and selecting adoption as the permanent plan) is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

7

Bruce A. Young, Judge

Superior Court County of Ventura

_____

David A. Hamilton , under appointment by the Court of Appeal, for E.C, Appellant

Amy Z. Tobin, under appointment by the Court of Appeal, for E.G., Appellant.

Leroy Smith, County Counsel, County of Ventura, Cynthia Krause, Assistant Countu Counsel, for Respondent.