Filed 12/18/13  In re S.T. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re S.T., a Person Coming Under the Juvenile Court Law. | B249356 (Los Angeles County Super. Ct. No. CK 58795) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. TERRY T., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elizabeth Kim, Juvenile Court Referee.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Terry T. (father) appeals the juvenile court's order denying his request to change a court order denying him reunification services. Father contends the juvenile court abused its discretion in finding father failed to show changed circumstances. We reject this challenge, and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. 2004 Dependency Proceedings

S.T., father's nine-year-old daughter, first came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in November 2004. DCFS received a referral alleging general neglect "after [S.T.] was born prenatally exposed to cocaine and marijuana."

On April 15, 2005, S.T. was declared a dependent of the court pursuant to Welfare and Institutions Code section 300, subdivision (b).[1] The petition, as later sustained, alleged Caroline G. (mother) and father's use of illicit drugs, their respective criminal histories, and their failure to cooperate with DCFS's maintenance contract placed S.T. "at risk of physical and emotional harm and damage and create[d] a detrimental home environment." Father's criminal history included "being [on] a register[y] of . . . controlled substance offender[s] and multiple felony convictions [for] possession of a controlled substance, possession of marijuana for sale, transport[ation]/[sale] of a controlled substance, and inflict[ion] [of] corporal injury to a spouse."

Reunification services were ordered for father on April 15, 2005. However, the services were terminated on December 1, 2005.

On February 6, 2007, S.T.'s maternal grandmother, I.S., was granted legal guardianship of S.T. S.T. remained in I.S.'s care and custody until her death on July 2, 2012.

### 2. Current Dependency Proceedings

On September 12, 2012, social worker Lia Jones visited S.T. at the home of her paternal grandmother, Anne H. Father, Anne H. and S.T. were present at the time.

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

According to father, S.T. was in father's care prior to I.S.'s death, but began to live with Anne H. after I.S.'s death. Father maintained a relationship with S.T. and visited her regularly over the years. Father denied any current domestic violence, drug abuse, or mental health problems. Father stated "he was willing to do what was required to have his daughter in his care" and wanted S.T. to remain in Anne H.'s home. He produced a letter from Community Build verifying his enrollment in parenting classes, and requested a drug test stating he "had been clean for years." Father was subsequently tested for drugs by DCFS, and the results were negative for all substances.[2]

S.T. confirmed father's statements regarding her living situation. S.T. stated she began to live with Anne H. after I.S.'s death in July 2012. According to S.T., father lived with S.T. and Anne H. in Anne H.'s home. S.T. saw father all the time and denied seeing father use drugs in the home. S.T. expressed her desire to reside with father, Anne H. or her maternal cousin, Lashonda C.

On October 16, 2012, an unidentified person reported that S.T. was a victim of general neglect and emotional abuse by mother and father. The reporter alleged the following: (1) S.T. resided in the home of her deceased legal guardian with mother and father; (2) mother and father used drugs in S.T.'s presence; (3) mother shouted profanities at S.T.; and (4) mother and father were under the influence of substances while caring for S.T.

In response to the information received on October 16, DCFS attempted to contact S.T. but was unsuccessful. DCFS located and spoke to father at I.S.'s home. Father denied the allegation of mother living in I.S.'s home and stated he was unaware of any family members residing in the home. Father also denied the allegation of S.T. being in mother's care and custody.

---

**2**      Community Build is a nonprofit community development corporation that is "dedicated to the revitalization of South Los Angeles communities through investment in youth and commercial economic development." (<http://www.communitybuild.org> (as of Dec. 18, 2013).)

On October 17, 2012, S.T. was detained and placed in foster care due to I.S.'s death and the need to further assess S.T.'s relatives. DCFS categorized S.T.'s family as "high risk for future abuse and neglect" and recommended S.T. be referred for adoption. Because of father's history of substance abuse and his failure to comply with a prior case plan, DCFS recommended the court deny family reunification services. However, as S.T. and father maintained a relationship and regularly visited one another, DCFS recommended, and the court ordered, monitored visitation for father.

On October 22, 2012, DCFS filed a supplemental petition for a more restrictive placement on S.T.'s behalf. The petition, as later sustained, alleged the previous disposition placing S.T. under I.S.'s care and custody was ineffective in the protection or rehabilitation of S.T. (§ 387, subd. (b).) The petition alleged "[t]he child . . . has no guardian to provide care, supervision and the necessities of life, including[] food, shelter, clothing and medical care for the child, in that the child's legal guardian/maternal grandmother . . . is deceased. Such an absence of a guardian endangers the child's physical health and safety and places the child at risk of physical harm and damage."

On November 20, 2012, S.T. was placed in Lashonda C.'s home after DCFS conducted an inspection of Lashonda C.'s residence. Lashonda C. ensured S.T. would be able to maintain contact with her parents and relatives. Lashonda C. stated she would provide S.T. with a safe and nurturing home.

On November 26, 2012, a permanent plan of foster care and a specific goal of legal guardianship were ordered by the court. The court denied reunification services to father.

On February 25, 2013, more than seven years after father's reunification services were terminated, father filed a section 388 petition to change the juvenile court's 2005 order to terminate reunification services. His request cited the following changed circumstances: "The father is enrolled in an outpatient program through Medicure[3] and

---

**3** Medi-Cure Health Services, Inc. (Medicure), is an outpatient alcohol, drug abuse treatment and nutrition education program.

4

is participating in domestic violence/anger management sessions, substance abuse sessions and relapse prevention sessions. Additionally, the father has been drug testing, and his results have all been negative."

In support of his section 388 petition, father provided a letter from Medicure, verifying his October 25, 2012 enrollment in the outpatient treatment program. As of February 5, 2013, father attended the following Medicure sessions: (1) four of the required 16 domestic violence/anger management sessions; (2) seven of the required 26 substance abuse sessions; and, (3) six of the required 26 relapse prevention sessions. Father tested negative for illicit drugs on four separate occasions: (1) October 25, 2012; (2) November 9, 2012; (3) December 14, 2012; and (4) January 24, 2013.

A section 366.26 hearing to determine the permanent plan was originally scheduled for February 25, 2013. However, the matter was continued to May 28, 2013.

On April 9, 2013, father's section 388 hearing was held. Father did not appear in court for the hearing. The court denied father's request to set a new contested section 388 hearing and denied father's section 388 petition. The court found father alleged only "changing circumstances," and not *changed* circumstances. Father challenges the denial of his section 388 petition.

## DISCUSSION

Father contends the juvenile court abused its discretion when it denied his section 388 petition. Father argues the "juvenile court erred when it found that [his] circumstances were merely changing." Although he admittedly has an "extensive history of drug-involved activities," father contends there is "undisputed evidence [to] demonstrate[] that he ha[s] dramatically changed his circumstances since 2004." We disagree.

"To prevail on a section 388 petition, the moving party must establish that new evidence or changed circumstances exist so that the proposed change in the court's order would promote the best interests of the child. [Citations.] Unless the moving party makes a prima facie showing of both elements, the petition may [be] denied without an evidentiary hearing. [Citation.] The determination of whether to change an existing

5

order is 'committed to the sound discretion of the juvenile court, and [its] ruling should not be disturbed on appeal unless an abuse of discretion is clearly established.' [Citation.]  An abuse of discretion occurs when the juvenile court has exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination. [Citation.]" (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 641-642.)

"[T]he essence of a section 388 motion is that there has been a change of circumstances." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531.)  Father alleges his October 25, 2012 enrollment and attendance in a 26-week outpatient treatment program and the negative results of four random drug tests show a change of circumstances. However, "[g]iven the severity of [father's] drug problem the court could reasonably find [his] sobriety between [the date of enrollment in the treatment program] and the date of the [section 388 petition filing] was not particularly compelling." (*In re Mary G.* (2007) 151 Cal.App.4th 184, 206.)  Father's drug use dates back to at least 1983.  Father suffered multiple arrests and criminal convictions related to the possession of narcotics between 1983 and 2003.  As a result of his drug use, father not only lost custody of S.T., but also of S.T.'s younger sibling, with whom he failed to reunify.  In addition, although father's few month's attendance in a treatment program is commendable, it is not enough to overcome the eight years that have passed since the juvenile court's 2005 order terminating reunification services.  (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 317 ["[a]fter the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount," and "'the focus shifts to the needs of the child for permanency and stability'"].)

While father's efforts at rehabilitation are an improvement, they do not demonstrate changed circumstances.  (See *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [finding three months of rehabilitation efforts for parents' extensive histories of drug use did not demonstrate changed circumstances]; *In re Marcelo B., supra*, 209 Cal.App.4th at p. 642 [concluding the father's return to treatment did not guarantee that he would achieve or maintain the sobriety required to parent the child].)  Due to the nature of drug addiction, "one must be 'clean' for a much longer period than 120 days to

show real reform." (*In re Kimberly F., supra*, 56 Cal.App.4th at p. 531, fn. 9; see *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424 [noting the father's "200 days [of sobriety] was not enough to reassure the juvenile court that the most recent relapse would be his last"].) Father's rehabilitation efforts were not enough to demonstrate changed circumstances.

In sum, there was no abuse of discretion in the juvenile court's summary denial of father's section 388 petition.[4]

## DISPOSITION

The order is affirmed.

FLIER, J.

WE CONCUR:

RUBIN, Acting P. J.

GRIMES, J.

---

**4** Because we conclude father failed to show changed circumstances, we need not address father's argument that he and S.T. "shared a solid bond." (Boldface omitted.)