Filed 1/8/16  In re K.I. CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.I. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. V.G. et al., Defendants and Appellants. | E063452 (Super.Ct.Nos. J249220, J249221, & J252549) O P I N I O N |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

John Fu for Defendant and Appellant R.I.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant V.G.

1

Jean-Rene Basle, County Counsel, and Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

## I.  INTRODUCTION

Defendants and appellants, R.I. (Father) and V.G. (Mother), appeal the juvenile court's April 9, 2015, order terminating their parental rights and placing their three children, J., K., and H. for adoption.  (Welf. & Inst. Code, § 366.26.)[1]  Father claims the court erroneously denied his section 388 petition, in which Father asked the court to grant him additional services and the opportunity to reunify with the children.  The petition was filed and denied by the court immediately before the section 366.26 hearing.  Mother did not file an opening brief on appeal.  Instead, she joins Father's argument on appeal, and claims that if his parental rights are reinstated hers must also be reinstated.  We affirm.

## II.  BACKGROUND

J. is a boy born in 2007; K., a girl born in 2011; and H., a boy born in December 2013.  Mother has five other children, including two girls, M. and C., born in 2001 and 2003.  Mother had a prior dependency case involving her five older children.  In that case, Mother failed to reunify with three of her five older children, but reunified with M. and C.

In May 2013, before H. was born, plaintiff and respondent, San Bernardino County Children and Family Services (CFS), detained J. and K., along with M. and C.,

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

outside the parents' custody, after C. reported Father had sexually abused her. Mother did not believe Father could have sexually abused either C. or M. M. denied that Father had sexually abused C. and claimed C. was fabricating the allegations. Mother admitted having a substance abuse problem with alcohol and marijuana. Father had a substance abuse-related criminal history, namely, possession of marijuana for sale, along with forgery and "[f]alse [i]mmigration for sale."

At a June 25, 2013, jurisdiction/disposition hearing for J., K., C., and M., the court sustained allegations that Father had sexually abused C., placing the other children at risk of similar abuse, and Father had a substance abuse-related criminal history. The court also sustained allegations that Mother had a substance abuse problem and had failed to protect the children. The court ordered reunification services for Father and Mother and granted Father weekly, one-hour, supervised visitation with J. and K.

H. was detained and placed in foster care shortly after he was born in December 2013. In a December 2013 six-month review report for J., K., C., and M., CFS recommended terminating both parents' services, setting a section 366.26 hearing, and placing all four children for adoption. By December 2013, Father had not participated in any of his court-ordered services. CFS reported that Father had had only two telephone contacts with the social worker, and said "he [did] not have time" to meet with the social worker or participate in services.

The six-month review hearing for J., K., M., and C. was continued to January 13, 2014, the same date as H.'s jurisdiction/disposition hearing. In its jurisdiction/disposition

3

report for H., CFS recommended denying services for both parents. At the January 13 hearing, CFS told the court it was now agreeable to providing Mother six more months of services. On January 28, the court sustained jurisdictional allegations for H., ordered additional services for Mother, terminated Father's services for J. and K., and denied Father services for H. on the ground he was H.'s alleged father.

In April 2014, CFS recommended a permanent placement plan for M. and C., who were living in separate group homes, and setting a section 366.26 hearing for J. and K., who had been living in the same foster home since October 2013, the same foster home in which H. was placed in December 2013. In May 2014, Mother's services were terminated, and the court set a section 366.26 hearing for J., K., and H. The section 366.26 hearing was continued several times, and was ultimately held on April 9, 2015.

By August 2014, Mother was in federal custody in Arizona and was still in federal custody at the time of the April 9, 2015, section 366.26 hearing. Father's whereabouts were unknown in August 2014, and he had not been present in court since the May 2, 2013, detention hearing for J. and K. In September 2014, K., J., and H. were moved to another foster home because their original foster parents were divorcing and requested that they be moved. On February 27, 2015, K., J., and H. were placed in what became their prospective adoptive home. M. and C. remained in separate group homes.

On April 9, 2015, the date of the section 366.26 hearing, Father filed a section 388 petition requesting that J., K., and H. be returned to his care under a family maintenance plan or that he be granted reunification services for them. Father claimed he had

4

completed individual counseling, where he addressed his "ongoing legal concerns and his efforts to regain custody of his children." He completed a 10-week parenting class in March 2015 through the San Bernardino City Unified School District. A letter from his therapist, in Upland, indicated he was a pleasure to work with; he had "fair insight" and was "receptive and open to suggestions"; and he continued to maintain he did not sexually abuse C. The letter also indicated that Father was being drug tested every two weeks; he brought his test results to his therapy sessions and the test results showed he was "clean." Father also submitted copies of six drug test results, showing he tested clean for drugs on six occasions between January 19 and April 7, 2015.

In court on April 9, Father's counsel requested an evidentiary hearing on Father's section 388 petition, arguing that the petition made a prima facie showing of changed circumstances and that granting it would be in the best interests of the children. Counsel for CFS pointed out that Father had never completed a substance abuse program, an important part of his case plan; there was no indication his drug tests had been random; thus his drugs tests did not show he was clean; and, most importantly, he had not visited the children since at least the prior year and had no relationship with them. Counsel for the children joined these arguments. After hearing argument from counsel, the court denied the petition, finding it did not state a prima facie case. The court pointed out that Father did not have a "significant bond" with the children because he had not visited them, and therefore could not show that returning the children to his care, or granting him additional services, would be in their best interests.

5

At the section 366.26 hearing, Father testified and admitted he had not visited J. or K. since they were detained in May 2013, and he had only seen H. once, when the social worker took H. to his brother-in-law's house. He claimed the social worker told him that he and Mother should separate; he temporarily left the state in order to work; and Mother told him she would "take care of everything that was going on." Father objected to the termination of his parental rights; he loved his children, had a bond with them before they were removed, and that's why he was "fighting to get them back." At the conclusion of the hearing, the court terminated parental rights and selected adoption as the permanent plan for J., K., and H.

### III. DISCUSSION

A. *Father's Section 388 Petition Was Properly Denied*

Section 388 allows the parent of a dependent child to petition the juvenile court to change, modify, or set aside a previous order of the court. The parent must show by a preponderance of the evidence (1) new evidence or changed circumstances justified the proposed change of order, and (2) the change would promote the best interest of the child. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317; § 388.) The decision to grant or deny the petition is addressed to the sound discretion of the juvenile court, and its denial of the petition will not be overturned on appeal unless an abuse of discretion is shown. (*In re S.J*. (2008) 167 Cal.App.4th 953, 959-960 [Fourth Dist., Div. Two].)

"Section 388 plays a critical role in the dependency scheme. Even after family reunification services are terminated and the focus has shifted from returning the child to

his parent's custody, section 388 serves as an 'escape mechanism' to ensure that new evidence may be considered before the actual, final termination of parental rights. [Citation.] It 'provides a means for the court to address a legitimate change of circumstances' and affords a parent her final opportunity to reinstate reunification services before the issue of custody is finally resolved." (*In re Hunter S*. (2006) 142 Cal.App.4th 1497, 1506.) "Section 388 is central to the constitutionality of the dependency scheme." (*Ibid.*)

Here, the juvenile court did not abuse its discretion in denying Father's petition. Father did not make a prima facie showing that his requested change of court order— either granting him custody of the children under a family maintenance plan, or granting him reunification services with the goal of returning the children to his care—would have served the best interests of J., K., or H. As the court pointed out, Father did not have a significant bond with the children, because he did not visit or contact them during their dependency. He had only seen H. once, when the social worker took H. to Father's brother-in-law's house, and he had never taken advantage of his right to visit J. and K.

Father claims he did not visit the children or participate in his case plan because the social worker "told him to stay away from the children." To the contrary, the record shows that Father refused to participate in his court-ordered case plan, and refused to visit the children despite CFS's "efforts to pursue contacts" between Father and the children. In addition, the children were happy in their prospective adoptive home and bonded to their prospective adoptive parents. Depriving the children of their new-found stability,

7

while giving Father another chance to reunify with them after he failed to participate in his court-ordered case plan or visit the children during their dependency would not have served their best interests.

B. *Father's Writ Petition Must be Denied*

On November 3, 2015, while this appeal was pending and before we issued our tentative opinion, Father petitioned this court for a writ of mandate, suggesting that we order the juvenile court to hold a new hearing to consider purported "new evidence," in the form of an unauthenticated, handwritten, and largely illegible letter from C. to Mother, dated December 22, 2014, where C. stated she "wish [she] never lied" because if she had not lied, Mother would "be with" her children. Father claims that, by the letter, C. recanted her accusation that Father had sexually molested her—the basis of one of the court's jurisdictional findings. Father also asks that, by the writ, we direct the court to reconsider evidence that he adduced on his section 388 petition and that is included in the record on appeal, namely, the certificate showing he completed a parenting program, his drug tests results, and the letter from his therapist indicating Father had "made a genuine effort to improve as a parent."

On November 12, we ordered Father's writ petition considered with this appeal for the sole purpose of determining whether an order to show cause should issue on the writ petition. Pursuant to our request, CFS filed an informal letter response to the writ petition, addressing whether an order to show cause should issue. Father did not respond to CFS's informal letter response.

8

We deny Father's writ petition by a separate order.

As CFS points out, an extraordinary writ is not available to redress Father's claim that C. recanted her allegation that Father sexually abused her. (*In re Brandon C.* (1993) 19 Cal.App.4th 1168, 1170-1171.) The father in *Brandon C.* petitioned the appellate court for a writ of habeas corpus, claiming his sister recanted her testimony that she had seen him sexually abuse his daughter. (*Id.* at p. 1170.) The court held that an extraordinary writ was not available to redress the father's recantation claim because he had a plain, speedy, and adequate remedy at law: raising the claim in a section 388 petition in the juvenile court. (*In re Brandon C.*, *supra*, at p. 1171.) Indeed, section 388 allows a parent of a dependent child to petition the court "for a hearing to change, modify, or set aside" any previous order of the court based on new evidence or changed circumstances. (§ 388, subd. (a)(1).) Father has not explained why he did not present his alleged "new evidence" of C.'s recantation to the juvenile court in a section 388 petition. A section 388 petition is, "by far," a "superior procedural vehicle for resolving the significant factual dispute and credibility issues" raised by Father's recantation claim. (See *In re Brandon C.*, *supra*, at pp. 1173-1174.)

We further observe that Father's writ petition does not make a prima facie showing of new evidence or changed circumstances under section 388, which would require the juvenile court to hold an evidentiary hearing on the petition if it were presented to the court as a section 388 petition. (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 641-642 [a § 388 petition may be denied without an evidentiary hearing

9

if it fails to make a prima facie showing that new evidence or changed circumstances exist so that the proposed change of order would promote the best interest of the child].) The letter from C. to Mother is unauthenticated; it is unaccompanied by a declaration by C., Mother, or anyone else stating that it is what it purports to be: a letter from C. to Mother. (Evid. Code, §§ 1400, 1401.)

Further, even if the letter can be authenticated, it is largely illegible and does not clearly indicate that C. was recanting her allegation that Father had sexually molested her. The letter simply states, among much illegible handwritten print, that: "I wish i never lied. Cus if i didn't you would be with your kids." It is by no means clear that C. was saying she lied when she claimed Father had sexually molested her.

Additionally, Father has not explained why the letter, dated December 22, 2014, constitutes "new evidence" or changed circumstances, that is, why Father could not, with reasonable diligence, have discovered the letter earlier and presented it to the court on or before April 9, 2015, in connection with his section 388 petition seeking further services. Father's appellate and writ counsel, John Fu, avers in a declaration supporting the writ petition that the letter was "given to" him "after" he was "retained," apparently to represent Father on this appeal, but Mr. Fu does not indicate who gave him the letter or explain why it was not available or discovered before April 9, 2015. The letter, in and of itself, represents neither new evidence nor changed circumstances. (See *In re Brandon C.*, *supra*, 19 Cal.App.4th at p. 1172.)

Lastly, Father's writ petition is without merit to the extent it relies on evidence presented to the juvenile court in connection with Father's section 388 petition, which the court heard and denied on April 9, 2015. To this extent, the writ petition merely rehashes Father's claim on this appeal that his section 388 petition should have been granted because he completed a parenting program, drug tested clean on several occasions in early 2015, and attended counseling, and because the social worker "told him to stay away from the children." As noted, substantial evidence belies Father's claim that the social worker told him to stay away from the children. Further, Father never participated in the services that were offered to him after the children were detained in 2013; he never visited J. or K.; and he visited H. only once during the dependency proceedings. At the section 366.26 hearing on April 9, 2015, the court found that Father did not have a significant bond with the children. The evidence also showed that the children were happy in their new home and bonded with their prospective adoptive parents. Given these circumstances, it is difficult to see how Father could make a prima facie showing, in a new section 388 petition, that setting aside the court's sexual abuse jurisdictional finding, or its section 366.26 orders, and granting Father additional services would serve the best interests of the children.

## IV.  DISPOSITION

The April 9, 2015, orders terminating parental rights to J., K., and H. and selecting adoption as their permanent plan are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

11

KING
J.

We concur:

RAMIREZ
P. J.

MILLER
J.