Filed 4/13/21  In re Antonio C. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ANTONIO C., a Person Coming Under the Juvenile Court Law. | B307682 (Los Angeles County Super. Ct. No. 18CCJP06275A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>Y.C.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge Pro Tempore. Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Y.C. (mother) appeals from the juvenile court's denial of her Welfare and Institutions Code section 388[1] petition requesting the reinstatement of reunification services with her son, Antonio C. (minor, born 2018), weekly drug testing, and unmonitored visitation. Finding no abuse of the court's discretion, we affirm.

## BACKGROUND

*Referral*

On the day minor was born, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging general neglect of minor by mother. In response, a DCFS social worker met with mother at the hospital. At that time, mother was a juvenile dependent. Mother admitted to having an extensive history of drug use since she was 12 years old. She had last used methamphetamine right before she found out she was pregnant.

DCFS concluded that minor's safety could not be ensured if he were released to mother. In addition to her drug abuse,

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

mother had an extensive history of running away as a minor and there was a high risk that she would flee to Mexico with minor. Therefore, minor was detained the day after his birth and placed in foster care in the home of Mr. and Mrs. G. (foster parents).[2]

*Dependency Petition*

On September 28, 2018, DCFS filed a single-count dependency petition seeking the juvenile court's exercise of jurisdiction over minor. Brought under section 300, subdivision (b)(1) (failure to protect), the petition alleged that mother had a six-year history of drug abuse and was a current user of methamphetamine, heroin, and marijuana, which rendered her unable to provide regular care of minor. The petition also alleged that mother had abused methamphetamine while pregnant with minor.

*Detention Hearing*

By the time of the detention hearing on October 2, 2018, mother had turned 18 years old. The juvenile court found that a prima facie case existed to detain minor from mother. The court ordered reunification services, including an inpatient drug treatment program, a parenting program, and individual counseling. Mother was granted monitored visitation.

*Adjudication Hearing*

On December 5, 2018, the juvenile court sustained the dependency petition as pled, declared minor a dependent of the court, and removed minor from mother.

Mother was ordered to participate in a full drug program with aftercare, weekly random or on demand drug testing, and a

---

[2]    Throughout the life of this dependency case, efforts to locate minor's alleged father were unsuccessful. He is not a party to this appeal.

12-step program.  She was required to undergo a psychiatric evaluation and to take all prescribed psychotropic medications.  She was also ordered to participate in parenting classes and individual counseling.  The court granted mother monitored visitation.

*Reunification Period*

Throughout the reunification period, minor remained in the home of his foster parents.  They provided minor with a safe and stable home, met his medical and developmental needs, and made him available for visitation with mother and contact with the DCFS social worker.  Minor appeared to have a strong bond with his foster parents.

Mother participated in monitored visitation with minor.  She would often arrive late, however, or cancel last-minute.  When offered make-up visits, mother would not follow through.  During the visits, mother would at times have minor interact with people who had not been preapproved by DCFS.

On her own initiative, mother enrolled in an inpatient substance abuse program in early October 2018.  She left the program in January 2019, stating that another patient was making it difficult for her.  She returned for treatment the next month, attending weekly individual counseling sessions and 12-step meetings.  In July 2019, mother transitioned from the inpatient treatment program to a sober living home.  In August 2019, she enrolled in a six-month outpatient program, through which she attended Mommy and Me classes with minor.  Mother left the sober living home in October 2019, claiming that the other "residents would 'talk a mess' and were not providing a good example [for] her."  By the middle of October 2019, mother was residing with her grandmother and minor sibling.  In

December 2019, she was engaged to be married and planned to move in with her fiancé,[3] who had a recent criminal history.

Mother consistently submitted to drug and alcohol testing. The tests all returned negative except for when she tested positive for alcohol on May 17, 2019, and for THC on June 20, 2019. It was possible that the positive alcohol result was caused by her prescribed asthma inhaler. Mother denied using THC. Mother failed to drug test on December 24, 2019.

According to mother's therapist, mother was doing well in therapy but progress had been slow. Mother frequently cancelled sessions, only attending about once per month. Mother did not provide DCFS with her psychiatrist's contact information, so it was unable to determine her compliance with taking psychiatric medication.

In its February 4, 2020, last minute information for the court, DCFS recommended that the juvenile court terminate reunification services. Although mother was participating in a drug program, parenting classes, and individual counseling, she had not yet completed any court-ordered programs. Nor had she "addressed case issues including family history and dysfunction, child protection, mental health, substance abuse, CSEC (Commercial Sexual Exploitation of Children) behavior, and self-esteem."

*Termination of Reunification Services*

The contested 12-month review hearing was held on February 6, 2020. Finding that mother's progress had not been substantial and that she had not complied with the case plan, the juvenile court terminated reunification services.

---

[3]     In the record, mother's fiancé is sometimes referred to as her boyfriend. For simplicity, we refer to him here as her fiancé.

*Post-Reunification Period*

According to reports filed by DCFS in May 2020, minor remained in the home of his foster parents, where his basic, medical, and developmental needs were met. The foster parents "appear[ed] to have a healthy and strong marriage." They expressed their love and attachment for minor, and wanted to adopt him. Minor was cheerful and comfortable engaging with his foster parents and displayed a secure and loving bond with them. He "refer[red] to them as 'mama' and 'dada.'"

Mother participated in routine monitored visitation with minor, which took place by video chat due to the COVID-19 pandemic. Mother struggled to adhere to the visitation guidelines. She was sometimes late or missed visits. Her fiancé had been asked not to participate in the visits, but he was still sometimes observed or overheard nearby.

DCFS recommended that the juvenile court terminate mother's parental rights.

*Mother's Section 388 Petition*

On June 2, 2020, mother filed a section 388 petition seeking the resumption of reunification services for six months, weekly drug testing, and unmonitored visitation. Mother contended that she had continued to participate in outpatient programs and had completed 23 hours of parenting classes, 12 Mommy and Me sessions, and more than 72 12-step meetings. She had attended her required group sessions regarding relapse prevention, anger management, and domestic violence. She had submitted to nine random drug tests, which all returned negative.[4]

---

[4] Mother submitted documentation of negative tests from August 16, 2019; October 11, 2019; November 4, 2019;

As to why the requested modification would be better for minor, mother stated: "Mother has been sober for a year, and she has maintained regular visitation with [minor] . . . .  Mother has previously participated in Mommy and [Me] classes.  [Minor] responds well to . . . mother."

*Interim Review Report*

In August 2020, DCFS filed a supplemental report addressing mother's section 388 petition.

A dependency investigator had interviewed mother on August 3, 2020.  When asked why she had not been able to reunify with minor, mother responded, "'Not being stable and not being on time.'"  As to never having unmonitored visitation with minor, mother explained, "'When I left the sober living home and told her (CSW) I was leaving to my grandmother's home, because she had an open case with my sister, so I guess it was not an appropriate living home, so I didn't get my [unmonitored] visits.'"

Mother had been renting a room for about four months.  She did not live with her fiancé, as they had broken up.  He had "relapsed and that is a big no-no[.]" Mother was pregnant and due that month.  She was attending NA/AA meetings by Zoom.  She denied using drugs since September 25, 2018.

Mother was not employed.  She had been fired from her job at Pizza Hut at the end of February 2020.  Mother had completed school through the eighth grade, but she planned to obtain her GED.

Regarding a recent arrest in June 2020, mother stated: "'I was at the projects that night.  I guess there were shots [fired] and a bunch of people ran.  I ended up going to KFC and the cops

---

December 20, 2019; January 8, 2020; January 28, 2020; February 19, 2020; March 9, 2020; and March 17, 2020.

showed up and got us.  But they let us go because they thought we had something to do with it; they had the wrong people.'"

When asked what had changed since the termination of reunification services and why she could now be successful in reunifying with minor, mother stated:  "'I have really matured from where I began.  I was very childish before; I was not getting my act straight.  Now, I am showing up on time.  I am taking responsibility for my actions.  I am really trying to be stable.  I have a lot of things going on now.  Those childish moments are over now.'"

Although mother had completed some court-ordered case plan services, DCFS remained concerned by "mother's housing instability and co-dependent behavior with her intimate partners."  A DCFS social worker involved in the case believed that mother was still living with her fiancé, as she had seen or heard the fiancé during previous meetings and phone calls less than a month prior.  Mother was not forthcoming about the relationship.

DCFS recommended that the juvenile court deny mother's section 388 petition.  It opined that mother "still needs to developmentally grow, gain true insight and exhibit maturity and establish a healthy foundation and environment.  While . . . mother has completed most of her court mandates, she has yet to demonstrate a significant change in her circumstances that would be greater than disrupting her son's current safety and stability.  At this time, the child . . . remains in a stable, loving and safe home in which his caregivers are committed to providing him with permanency through adoption while maintaining ties and a relationship with [h]is mother."

*Order Denying Mother's Section 388 Petition*

The juvenile court heard and denied mother's section 388 petition on August 17, 2020. While the court agreed that "mother certainly ha[d] made some modifications to her lifestyle[,]" it concluded that she was "in a changing position" but had not "changed." The court also found that it was not in minor's best interests to grant the petition. It noted that "the only parent[s] this child knows [are] the caretakers that currently have him."

*Appeal*

Mother timely appealed from the order denying her section 388 petition.

## DISCUSSION

On appeal, mother argues that the juvenile court abused its discretion by denying her section 388 petition because she showed both changed circumstances and that the request promoted minor's best interests.

I. *Applicable Law*

A parent or other interested party may petition the juvenile court to change, modify, or set aside a previous order in dependency proceedings. (§ 388, subd. (a)(1).) "The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 (*Mickel O.*).)

To satisfy the first prong, "the change in circumstances must be substantial." (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) Merely changing—as opposed to changed—circumstances will not suffice. (*Mickel O., supra,* 197 Cal.App.4th at p. 615.)

9

For the second prong, specifically when determining whether reinstatement of reunification services is in the best interests of the child, the juvenile court must consider whether "the specific factors that required placement outside the parent's home" have been remediated and prioritize "the goal of assuring stability and continuity" for the child. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 463–464.) "[A]fter reunification services have terminated, a parent's petition for . . . reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527 (*J.C.*).)

II. *Standard of Review*

We review the denial of a section 388 petition for abuse of discretion. (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642 (*Marcelo B.*).) "An abuse of discretion occurs when the juvenile court has exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination." (*Ibid.*)

III. *Analysis*

Because mother did not demonstrate a substantial change of circumstances or that reunification would serve minor's best interests, the juvenile court did not abuse its discretion by denying her section 388 petition.

A. <u>Change of circumstances</u>

Following the termination of reunification services in February 2020, mother continued to participate in outpatient programs, drug test negative, and participate in routine monitored visitation with minor. She had also found a room to rent. These were positive, commendable steps. But given the totality of the evidence, they could reasonably be viewed as indicative of changing—as opposed to substantially changed—

10

circumstances in mother's life, which are insufficient for a section 388 petition. (See *Mickel O.*, *supra*, 197 Cal.App.4th at p. 615 [a section 388 "petitioner must show *changed*, not changing, circumstances"].)

Mother's visitation remained inconsistent, as she was sometimes late or would miss the visit entirely. She also continued to struggle with adhering to the visitation guidelines by allowing her fiancé to be in the vicinity even though he had been asked not to participate. Although mother claimed that she had broken up with her fiancé and did not live with him, a DCFS social worker had seen or heard the fiancé during previous meetings and phone calls and believed that mother was still living with him. Mother had been fired from her job and, months later, was still not employed.

A few weeks before the juvenile court denied the section 388 petition, mother told the dependency investigator, "I am really trying to be stable." But "trying to be stable" is not the same as being stable. Mother's failure to comply with visitation rules, consistently attend visitation, be forthcoming about her relationship with fiancé and living situation, and maintain employment demonstrate continued instability in her life. It was not "arbitrary, capricious or patently absurd" (*Marcelo B.*, *supra*, 209 Cal.App.4th at p. 642) for the court to determine that mother had not made a sufficient showing of substantially changed circumstances.

B. <u>Minor's best interests</u>

The juvenile court also acted well within its discretion in concluding that minor's best interests would not be promoted by reinstating reunification services, ordering weekly drug testing, and granting unmonitored visitation.

11

Minor had lived in the home of his foster parents since he was two days old. As the juvenile court noted, they were the only parents he had ever known. He "refer[red] to them as 'mama' and 'dada.'" They had provided minor with a stable, loving home for nearly two years and wanted to adopt him. In contrast, mother had never progressed to unmonitored visitation with minor.

Even if we credit mother's assertion that minor had some bond with her, mother's petition failed to even address—let alone establish—how reinstating reunification services, or the other requested modifications, would "advance [minor's] need for permanency and stability." (*J.C.*, *supra*, 226 Cal.App.4th at p. 527.) To the contrary, granting mother's petition would necessarily delay minor becoming a permanent member of his foster family in exchange for the mere possibility that minor might eventually reunify with mother. This would "not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

## DISPOSITION

The order denying mother's section 388 petition is affirmed. NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
ASHMANN-GERST

We concur:


_____, J.  _____, J.
CHAVEZ                         HOFFSTADT